# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00353-SCT

*PETER BARRETT AND FAY BARRETT*

*v.*

*CITY OF GULFPORT, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/10/2015 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEY: | HUGH D. KEATING |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | GAIL D. NICHOLSON |
| ATTORNEY FOR APPELLEE: | MARGARET E. MURDOCK |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The Gulfport City Council approved the City of Gulfport's application to use the historic Grass Lawn Home as a recreation center upon its reconstruction after Hurricane Katrina. Peter and Fay Barrett appealed the City Council's decision to the Harrison County Circuit Court, arguing that Grass Lawn was zoned exclusively for residential use and that the City had abandoned any nonconforming use on the property in question. The circuit court dismissed the Barretts' claim as moot, and the Barretts now appeal to this Court. We find that the circuit court correctly found that the Barretts' appeal was rendered moot by the City's withdrawal of its application, and the Barretts' appeal does not meet an exception to the

mootness doctrine. Accordingly, we affirm the circuit court's dismissal of the Barretts' appeal.

## FACTS & PROCEDURAL HISTORY

¶2. The instant case arises out of the City's efforts to rebuild the antebellum home Grass Lawn after it was destroyed during Hurricane Katrina. Grass Lawn was built in 1836, sixty years prior to the City's founding. Grass Lawn served as a private residence until 1973, when the City purchased it to use as an event space for weddings, parties, and other private events. Critically to this case, the Grass Lawn property is located in a R-1-7.5 zoning district, which is defined as "single-family residence districts – low density."[1]

¶3. On August 29, 2005, Grass Lawn was reduced to its slab by Hurricane Katrina, and it remained in this condition for roughly three years. In November of 2008, the City filed an application with its Department of Urban Development Planning Commission seeking approval "[t]o allow a non-conforming use in an R1.75 zoning district. The use shall be a Recreational facility." The application identified Grass Lawn as the property in question and also noted that the "building/structure does conform with R1.75 zoning requirements."

¶4. The City's application seems self-contradictory at first glance. The application requests approval of a nonconforming use on the property but states that Grass Lawn will be

---

[1] Gulfport, Miss., Code of Ordinances Appx. A, § III(C)(4) (1989) ("[R-1-7.5] districts are composed mainly of areas containing one-family and open areas where such development seems likely to occur. The district regulations are designed to protect the residential character of the districts by prohibiting all commercial activities; to encourage a suitable neighborhood environment for family life by including among the permitted uses such facilities as schools and churches; to prevent overcrowding of land by requiring certain minimum yard and other open spaces for all buildings; and to avoid excessive population density by requiring a certain minimum building site area for each dwelling unit.")

used as a "recreational facility." The record reveals that the City intended to use the term "public recreation center," rather than "recreational facility," as the former is included in the City's zoning ordinances as a permitted use for property located within a R-1-7.5 zoning district. This intent is supported by the City's later arguments before the Planning Commission and City Council. Because Planning Commission approval still is required for permitted uses, it appears that the purpose of the City's application was to secure a *permitted* use – a public recreation center – rather than a *nonconforming* use for Grass Lawn.

¶5.     The City's application was accompanied by a letter from Frank Genzer, whose architecture firm Genzer-WHLC was planning the reconstruction of Grass Lawn. The letter established that the reconstruction of Grass Lawn "will re-establish its use as a museum, providing educational tours and lectures, as well as a location for community receptions."

¶6.     The Gulfport Code of Ordinances requires the Planning Commission to respond to applications like the City's at its next regular meeting after such an application is filed.[2] However, in this case, Planning Commission Chairperson Anna D. Stewart was asked to schedule a special meeting on December 2, 2008, to consider the City's application. She refused, noting that a City Council meeting was scheduled for the same day. City Council members often attended the Planning Commission's meetings, and Stewart felt it would be appropriate to give them the opportunity to do so in this case. Over Stewart's objection, Larry

---

[2] Gulfport, Miss., Code of Ordinances Appx. A, § VIII(A)(3)(a) (1989) ("Within ten (10) days of the receipt of an application, the building official shall transmit the application, together with the proposed site plan, to the planning commission. At its next regular meeting, but in any event within forty-five (45) days of receipt of such application by the building official, the planning commission shall approve or disapprove the application as to the location and site plan.")

3

Jones, the Planning Commission's Director of Urban Development, scheduled a special meeting on December 2, 2008, to review the City's application. Stewart objected to Jones's actions as violating the Planning Commission's bylaws, which give only the chairperson the authority to call special meetings. Stewart also objected to the use of her name on the public notice for the meeting.

¶7. Peter and Fay Barrett, who owned property adjacent to Grass Lawn, filed a Memorandum in Opposition to the City's application. The Barretts alleged that the City had used Grass Lawn as a private event venue, a nonconforming use for its zoning district, since 1973. The Barretts then argued that the City had abandoned any continued nonconforming use of Grass Lawn by failing to file a building permit within one year after Grass Lawn was destroyed by Hurricane Katrina, as required by the City's zoning ordinances.[3] The Barretts also contended that the use of the term "recreational facility" in the City's application was a "subterfuge," because the City did not intend to rebuild Grass Lawn as a public recreation center within the meaning of the zoning ordinances. Rather, the Barretts alleged that the City intended to continue to use Grass Lawn as a commercial space and included the term "recreational facility" only as an attempt to fit within the zoning regulations. Finally, the

---

[3] Gulfport, Miss., Code of Ordinances Appx. A, § VII(D)(6) ("Should such nonconforming structures and premises in combination be destroyed or damaged by an act of God, including tornado, hurricane, flood, wind, earthquake, etc., or accident not caused purposefully by the owner or tenant, the structure may be replaced or required [sic]. However, such replacement or repair shall be subject to the following provision: Application for a building permit must be made to the building official within one year of the time that the structure was destroyed. However, in cases of hardship the mayor and board of commissioners shall have the authority to extend said one-year limitations for additional periods of time upon application of the owner or leaseholder.")

4

Barretts argued that Grass Lawn's suggested use as a museum would not conform with the zoning ordinances, either. Accordingly, the Barretts asked the Planning Commission to deny the City's application.

¶8. The special meeting of the Planning Commission took place on December 2, 2008. At the hearing, Jones explained that the term "recreational facility" was used in the application because "that terminology is in the ordinance . . . . Really, a better explanation of the use would be a museum available to the public for private events." Genzer confirmed that Grass Lawn was being designed as a museum which could be rented to private parties for events. Jones and Genzer explained that Grass Lawn itself would be rebuilt as it originally stood in 1836, with any later additions to the home being excluded from the plans. However, a catering kitchen, public restrooms, and offices would be added in an adjacent building on the property. A representative of Genzer's architecture firm explained that the plan to rebuild Grass Lawn had taken longer than expected becasue it was being funded by FEMA and had to be approved by FEMA, the National Historic Association, and the Mississippi Department of Archives and History.

¶9. The Barretts appeared at the meeting and argued that the applicable zoning ordinances required that the property be limited to residential use because the City had failed to apply to rebuild Grass Lawn within the one-year time limit. Other neighboring property owners appeared at the meeting and explained the various problems caused by Grass Lawn's former use as a private event venue. They contended that the neighborhood in which Grass Lawn was located consistently was filled with loud noise and heavy traffic during events and that

5

the City had failed to enforce any noise or traffic regulations or the fire code at Grass Lawn in the past. In response, Jones argued that the Planning Center was not being asked to approve a nonconforming use for Grass Lawn but "to approve what is termed in the ordinance a recreational center public [sic]." He claimed that Grass Lawn fit within the definition of a public recreation center because it would be "available to the public for private use."

¶10. The Planning Commission ultimately approved the City's application to use Grass Lawn as a recreation center, with conditions placed on the property concerning event parking and security. Aggrieved by the Planning Commission's decision, the Barretts appealed to the Gulfport City Council.

¶11. The City Council hearing was held on January 20, 2009. The Barretts argued that the Planning Commission's decision to approve the City's application was invalid because it did not have the authority to call a special meeting to consider the application. They also reiterated their argument that the City had failed to preserve any nonconforming use on the property by failing to apply for a building permit within the one-year time limit, noting that this limitations period had been enforced strictly against members of the public after Hurricane Katrina. One member of the City Council voiced her concern regarding the manner in which the Planning Commission's hearing was scheduled. She also had the City attorney confirm that Grass Lawn's prospective use a museum would not qualify as a conforming use under the applicable ordinances. Another member of the City Council noted that the City had denied a nonconforming-use application from an applicant who had missed the one-year

6

filing deadline by less than three weeks. Ultimately, however, the City Council voted 3-2 to approve the decision of the Planning Commission.

¶12. On January 29, 2009, the Barretts filed a notice of appeal to the Harrison County Circuit Court. Then, on March 27, 2009, the Barretts filed a motion for mandamus asking the circuit court to compel the City to prepare a bill of exceptions, as is statutorily required in appeals from the decisions of municipal authorities. *See* Miss. Code Ann. § 11-51-75. An order granting mandamus was entered on May 21, 2009, and City transmitted the record to the circuit court on June 4, 2009. The circuit court entered a scheduling order on July 29, 2009, setting the matter for oral argument on December 10, 2009. The parties were ordered to file any briefs by this date as well.

¶13. The Barretts timely filed their brief with the circuit court, but the City never filed a responsive brief. Instead, on December 3, 2009, the City withdrew its application to use Grass Lawn as a recreation center. Then, in May 2010, the City Council amended Appendix A, Section II(D) of the Gulfport Code of Ordinances to exempt all city-owned property from the City's zoning ordinances.[4] This exemption previously had applied only to property owned by the United States, the State of Mississippi, or Harrison County. Then, on April 16, 2013, the City Council issued a resolution declaring Grass Lawn "surplus municipal real

---

[4] Gulfport, Miss., Code of Ordinances Appx. A, § II(D) (1989) ("Property owned by the United States of America, the State of Mississippi or Harrison County, and which is not subject to the police power of the city, and property owned by the city or its urban renewal agency are hereby declared to be exempt from all regulations of this appendix. Such property is designated on the official zoning map as G.P. (government property). Transfer of such property to private ownership shall automatically subject it to the regulations of the district in which it is located.")

property . . . which is not presently needed for a valid municipal purpose[.]" The resolution approved a lease agreement with Salute Italian, LLC, for the purpose of operating Grass Lawn as "an event/catering venue for private parties[.]" This action prompted the Barretts to resume the prosecution of their appeal.[5]

¶14.   On April 26, 2013, the Barretts filed a motion for entry of judgment, arguing that the City had admitted to the claims in their brief by failing to file a responsive brief. They also alleged Grass Lawn currently was in violation of the City's zoning ordinances because the City had leased it as a commercial enterprise. In response, the City filed a motion to dismiss the Barretts' appeal as moot.  The City argued that the only issue before the court was whether Grass Lawn qualified as a "recreational center" under the City's zoning ordinances. Because the City had withdrawn its application with the Planning Commission to use Grass Lawn as a recreation center, it argued that the Barretts were left with no valid claims.

¶15.   On May 6, 2014, the circuit clerk filed a motion to dismiss the Barretts' appeal for want of prosecution. The circuit court then held a hearing on August 21, 2014, to consider the Barretts' motion for entry of judgment and the City's motion to dismiss.  After the hearing, the record is silent again until January 10, 2015, at which point the circuit court entered its final judgment dismissing the Barretts' appeal as moot. Aggrieved by the circuit court's judgment, the Barretts have appealed to this Court.  While the Barretts raise six

_____

[5] The Barretts contend that they did not actively pursue their appeal from December 2009 to April 2013 for two reasons.  First, the Barretts claim that they were unsure of the City's plans for Grass Lawn after it withdrew its application with the Planning Commission. Second, the City apparently was engaged in unrelated litigation regarding the reconstruction of Grass Lawn during this period.

assignments of error on appeal, we have consolidated their arguments into the following dispositive issues:

I. **Whether the circuit court erred in finding that the Barretts' appeal was moot.**

II. **Whether the Barretts' appeal meets an exception to the mootness doctrine.**

The Barretts' remaining arguments were not properly before the City Council or the circuit court and therefore are inappropriate for review by this Court at this time.

## STANDARD OF REVIEW

¶16. "Mootness has been called 'the doctrine of standing set in a time frame[.]'" ***In re City of Biloxi***, 113 So. 3d 565, 572 n.4 (Miss. 2013) (citations omitted). The question of standing is a jurisdictional issue and is reviewed de novo. ***Hall v. City of Ridgeland***, 37 So. 3d 25, 33 (Miss. 2010).

## DISCUSSION

I. **Whether the circuit court erred in finding that the Barretts' appeal was moot.**

¶17. "Cases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot." ***Allred v. Webb***, 641 So. 2d 1218, 1220 (Miss. 1994). "[A] case is moot so long as a judgment on the merits, if rendered, would be of no practical benefit to the plaintiff or detriment to the defendant." ***Gartrell v. Gartrell***, 936 So. 2d 915, 916 (Miss. 2006). This Court will not adjudicate moot questions. ***City of Madison v. Bryan***, 763 So. 2d 162, (Miss. 2000) (citations omitted). In this case, the circuit court framed the Barretts' appeal as "an appeal concerning the use of [Grass Lawn] as a 'recreation center'"

and found that the Barretts' appeal was rendered moot by the City's withdrawal of its application to use Grass Lawn as a recreation center. The court reasoned:

> An action, in this case an appeal to this Court from the Gulfport City Council, seeking to prohibit the City from utilizing a piece of real property as a "recreation center" most certainly expired, and thereby became moot, when the City has advised it no longer intends to use the property as a "recreation center" and has, in fact, withdrew [sic] its application to use the property as such.

The circuit court also found that the instant appeal was not an appropriate avenue to raise new claims concerning other potential uses for Grass Lawn.

¶18.    We agree with the circuit court that the Barretts' appeal of the City Council's decision to approve Grass Lawn's use as a recreation center is moot. In reviewing the viability of the Barretts' appeal, it is important first to clarify the scope of the circuit court's review in this case. The circuit court was acting as an appellate court on review of a bill of exceptions challenging the decision or judgment of a municipal authority. *See* Miss. Code Ann. § 11-51-75. In such a case, the bill of exceptions serves as the record on appeal and "embodies the facts, judgment, and decision involved" in the proceedings below. ***Ladner v. Harrison Cty. Bd. of Supervisors***, 793 So. 2d 637, 638-39 (Miss. 2001). Thus, the circuit court, acting as an appellate body, must limit its review of the evidence to the bill of exceptions. ***Id.*** Here, the circuit court was limited to determining whether the City Council, based on the evidence contained in the bill of exceptions, had erred in approving the City's application to use Grass Lawn as a recreation center. Any ruling with respect to the City's application would be of no benefit to the Barretts or detriment to the City, as the application no longer is valid. ***Gartrell***, 936 So. 2d at 916. And any procedural defects in the Planning Commission's approval of

10

the application were cured by the subsequent withdrawal of the application. This Court previously has found appeals to be moot under similar circumstances occurring after the perfection of the appeal. *See* ***In re Order Establishing Civil, Criminal Divs. in Hinds Cty. Circuit Court***, 186 So. 3d 481, 484 (Miss. 2012) (constitutional challenge to judge's order dividing Hinds County Circuit Court into Civil and Criminal Divisions rendered moot by judge's subsequent withdrawal of order); *Gartrell*, 936 So. 2d at 917 (appeal of chancellor's judgment granting appellee subpoena to depose an out-of-state party rendered moot by appellee's subsequent waiver and withdrawal of subpoena).

¶19. The Barretts have raised various allegations concerning the City's potential or actual use of Grass Lawn after the application was withdrawn, but those issues were not before the City Council or the circuit court. The narrow issue on appeal was the propriety of the City Council's decision to approve Grass Lawn's use as a recreation center, and that issue has expired.

¶20. In addition, the Barretts' appeal was rendered moot by the City Council's amendment of Appendix A, Section II(D)(6) of the Gulfport Code of Ordinances, exempting all city-owned property from complying with the City's zoning ordinances. Resolution of the Barretts' claim that the City Council had approved a nonconforming use for Grass Lawn would be of no benefit to the Barretts due to the current state of the City's zoning ordinances. The Barretts argue that this amendment constitutes illegal spot zoning, but the instant appeal is not the appropriate forum to challenge the legality or constitutionality of the City's

11

subsequent amendment of its zoning ordinances, regardless of the merit of the Barretts' arguments.

¶21.    The amendment in question occurred in May 2010, after the City Council approved the City's application, so evidence of the amendment's passage is not part of the bill of exceptions. Thus, the Barretts argue that the circuit court erred in considering this evidence, since it was not considered by the City Council in approving the City's application. We find the Barretts' argument to be without merit. The issue of mootness, by its very nature, most commonly arises after a case has been submitted to a court for resolution.[6] *See Fails v. Jefferson Davis Cty. Pub. Sch. Bd.*, 95 So. 3d 1223, 1226 (Miss. 2012) (challenge to Jefferson County School District Superintendent's decision to revoke all student transfers to Lamar County School District rendered moot when, after perfecting their appeal, the appellants moved to Lamar County, giving their child a statutory right to attend school in Lamar County). Thus, it was appropriate for the circuit court to consider events occurring after the City Council's decision for the limited purpose of determining the issue of whether the Barretts' appeal of the City's Council's decision was moot. On the other hand, the substantive issue of whether the passage of the amendment constitutes spot zoning is a separate, fact-intensive question which must be brought in the first instance in the appropriate forum before being subjected to appellate review.

II.    **Whether the Barretts' appeal is excepted from the mootness doctrine.**

---

[6] Likewise, we find no merit in the Barretts' argument that the circuit court erred in relying on the City's grant of a Historic Preservation Easement on Grass Lawn in 2012 in finding that the Barretts' appeal was moot.

12

¶22. The Barretts argue that their appeal is excepted from the mootness doctrine because their claims involve matters of the public interest and are capable of repetition yet evading review. This Court will not consider a case to be moot if the challenged action is capable of repetition yet evading review, meaning that "(1) The challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) There was a reasonable expectation that the same complaining party would be subject to the same action again." **Strong v. Bostick**, 420 So. 2d 1356, 1359 (Miss. 1982) (quoting **Weinstein v. Bradford**, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975)). In addition, this Court will review an otherwise moot issue "when the question concerns a matter of such a nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct." **Sartin v. Barlow**, 16 So. 2d 372, 376 (Miss. 1944). The circuit court reviewed the Barretts' appeal under the "capable of repetition yet evading review" exception and found that this exception did not apply. The court reasoned:

> The parties were given the full opportunity to state their positions with regard to the pending question. At no point have the appellants asserted that they were, at any time, denied the opportunity to present their position fully before the Planning Commission . . . . Further, based on the record before the Planning Commission and based on the City's withdrawal of its application to use the structure at 720 East Beach Boulevard as a "recreation center," it is evident that the [City] has no intent to use this structure as a "recreation center."

The trial court did not consider the public-interest exception to the mootness doctrine.

¶23. We find that the circuit court did not err in finding that the Barretts' appeal did not meet the "capable of repetition yet evading review" exception to the mootness doctrine.

13

Specifically, the Barretts' appeal does not meet the second prong of the ***Strong*** test. Neither the Barretts nor any other neighboring landowners to Grass Lawn have a reasonable expectation that Grass Lawn will be used as a recreation center in the future. The City has withdrawn its application to use Grass Lawn as a recreation center and has admitted that Grass Lawn's current design would not be conducive to such use. The ***Strong*** test requires an expectation that the complaining party would be "subject to *the same action* again." ***Strong***, 420 So. 2d at 1359 (emphasis added). In addition, it would be impossible for these issues to be repeated under the current state of the City's zoning ordinances, as the Grass Lawn property currently is exempt from the ordinances in question.

¶24.    The Barretts also argue that their appeal fits within the public-interest exception to the mootness doctrine. However, aside from the assertion that "[t]he Public Interest aspect of accountability for [the City's] tactics should be self evident," the Barretts have neither offered a substantive argument nor cited any authority explaining how this exception applies to this case. "[I]t is the duty of an appellant to provide authority and support of an assignment." ***Hoops v. State***, 681 So. 2d 521, 526 (Miss. 1996). "Failure to cite any authority is a procedural bar, and [this Court] is under no obligation to consider the assignment." ***Weaver v. State***, 713 So. 2d 860, 863 (Miss. 1997) (citing ***McClain v. State***, 625 So. 2d 774, 781 (Miss. 1993)).

**CONCLUSION**

¶25.    We find that the circuit court did not err in finding that the Barretts' appeal was rendered moot by the City's withdrawal of its application to use Grass Lawn as a recreation

14

center.  In addition, the issues raised in the Barretts' appeal do not meet an exception to the mootness doctrine.  Accordingly, we affirm the judgment of the circuit court.

¶26.  **AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**